IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

STANLEY W. PERRY,

                             Plaintiff,                    Case No. 3:08 CV 921

       -vs-

                                                                <u>MEMORANDUM   OPINION</u>

PERRY FARMS, INC.,

                            Defendant.

KATZ, J.

This matter is before the Court on Defendants Perry Farms, Inc. ("Perry Farms"), Per-Co Ltd. ("Per-Co"), North-Cross Development Co., Ltd. ("North Cross"), Jimmie W. Perry ("Jimmie Perry"), C.B.A. Leasing, Ltd. ("CBA"), B.C.A. Express Co., Ltd. ("BCA"), B.D.P. of Northwest Ohio, LLC ("BDP"), and Soil Enrichment Materials Co., Ltd.'s ("SEMCO") (collectively "Defendants") motion for summary judgment.  (Doc. 23).  Plaintiff Stanley W. Perry ("Plaintiff") filed an opposition to the motion on May 13, 2009 (Doc. 36) and Defendants filed a reply on June 24, 2009.  The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

**I.  Background**

Plaintiff alleges that Defendants breached and violated their fiduciary duty by: (1) diverting assets through loans to third-parties; (2) transferring assets to other entities; (3) threatening Plaintiff's ownership interest; (4) changing Plaintiff's share in profits; and (5) excluding Plaintiff from distributions to shareholders.  (Doc. 1).  On April 28, 2008, Defendants answered (Doc. 10), and on February 4, 2009, Defendants filed a motion for summary judgment. (Doc. 23).  The issue before the Court is whether Defendants, more specifically Defendant Jimmie Perry, breached and violated his fiduciary duties as president or manager to Plaintiff.

Plaintiff is a minority shareholder of Perry Farms and a member of Per-Co and North-Cross. (Doc. 1). Defendants include various business entities created for the purpose of real estate investment and development in addition to securing municipal contracts for the disposal and re-use of municipal waste products for agricultural use. (Doc. 23). Plaintiff alleges that Defendants CBA, BCA, BDP and SEMCO have received assets from Jimmie Perry through unlawful diversion and transfer of assets. (Doc. 1). Jimmie Perry is the president or manager of all of the aforementioned business entities with the exception of SEMCO. (Doc. 23).

## II. Standard of Review

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). The party opposing summary judgment cannot rest on its

2

pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Ciminillo v. Streicher,* 434 F.3d 461, 464 (6th Cir. 2006); *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071; *Bultema v. United States*, 359 F.3d 379, 382 (6th Cir. 2004). The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### III.  Discussion

"Generally, majority shareholders have a fiduciary duty to minority shareholders." *Crosby v. Beam*, 47 Ohio St. 3d 105, 108 (1989) (citing *Jones v. H.F. Ahmanson & Co.*, 1 Cal. 3d 93 (1969)).  In Ohio, courts have found a heightened fiduciary duty to exist between majority and minority shareholders in a close corporation, which typically includes a few shareholders whose corporate shares are not generally traded on a securities market.  *Id.*  The majority shareholder has a duty to the minority shareholder to not abuse his power by promoting personal interests over corporate interests.  *Id.* at 109.  A majority shareholder breaches his fiduciary duty to the minority shareholders when his control over the corporation is to his own advantage, and utilized to prevent the minority from having an equal opportunity absent a legitimate business purpose.  *Id.*  (citing *Donahue v. Rodd Electrotype Co. of New Eng., Inc.*, 367 Mass.  578 (1975)).  The majority shareholders must provide the legitimate business purpose for the actions that allegedly constitute a breach of fiduciary duty in order to escape liability.  *Thomas v. Fletcher*, No. 17-05-31, 2006 WL 3702699, at *5 (Ohio Ct. App. Dec. 18, 2006).

Defendants argue that Plaintiff fails to produce evidence of (1) breach of a fiduciary duty; (2) how Defendants' actions damaged Plaintiff; and (3) the basis for a direct action.  (Doc. 23).  Specifically, Defendants contend that loans provided to BCA and CBA, the sale of various properties, and the receipt of distributions by select shareholders do not amount to breaches of fiduciary duty, and therefore Defendants are entitled to judgment as a matter of law.  (Doc. 39).  Plaintiff responds, arguing that sufficient evidence of a breach of a fiduciary duty exists and therefore summary judgment is inappropriate.  (Doc. 36).

#### A.  Direct vs. Derivative Action

4

Defendants argue that Plaintiff fails to establish a basis for a direct action as opposed to a derivative action.  (Doc. 23).  Defendants suggest that Plaintiff has not produced evidence of a separate and distinct injury from the corporation, and therefore is barred from bringing a direct action.  *Id.*  Plaintiff responds, arguing that majority shareholders' breach of their fiduciary duty to a minority shareholder is actionable directly.  (Doc. 36).

"A shareholder's derivative action is brought by a shareholder in the name of the corporation to enforce a corporate claim."  *Crosby*, 47 Ohio St. 3d at 107.  "[I]f the complaining shareholder is injured in a way that is separate and distinct from an injury to the corporation, then the complaining shareholder has a direct action."  *Id.*  Claims of a breach of fiduciary duty alleged by minority shareholders against majority shareholders may be brought as a direct action.  *Id.* Individual claims of injury provide grounds for a direct action, whereas injuries that indirectly affect shareholders or affect shareholders as a whole require derivative actions.  *Adair v. Wozniak*, 23 Ohio St.3d 174 176 (1986).

Plaintiff claims that Defendants' breached their fiduciary duties as majority shareholders and managers, and indicates that the damage in question affects Plaintiff individually rather than the corporation as a whole.  In *Crosby*, minority shareholders brought suit against majority shareholders for a breach of fiduciary duties in a closed corporation.  The Supreme Court held that the claim for a breach of fiduciary duty alleged by minority shareholders against majority shareholders should be brought as a direct rather than derivative action, in part because a derivative action would effectively provide a remedy to the wrongdoers themselves.  *Id.*

Therefore, a derivative action would not provide an effective remedy in the instant case, and a direct action is more suitable for Plaintiff, a minority shareholder.  Plaintiff's claim of a

5

breach of fiduciary duty by majority shareholders would not be afforded a proper remedy if brought as a derivative action.

### B.  Loans to BCA and CBA

Plaintiff asserts that Defendants, specifically Jimmie Perry, breached their fiduciary duties by diverting assets through loans to other entities that Plaintiff did not have an interest in.  (Doc. 36).  Plaintiff further contends that assets of Perry Farms, Per-Co, and North-Cross were transferred to other entities and demonstrate the aforementioned breach.  *Id.*

Under Ohio law, several statutory provisions empower corporations to purchase and sell property, make contracts, issue and sell notes, bonds and other evidences of indebtedness, and do all things permitted by law and exercise all authority within or incidental to its articles.  *See* Ohio Rev. Code Ann. § 1701.13 (2009).  These statutory provisions embody codification of the common-law rule that corporations may lend assets when such a loan is directly related to the furtherance of corporate purposes, and where the loan is for the purpose of employing idle assets.  *See Nat'l Bank of Wash. v. Cont'l Life Ins. Co.*, 41 Ohio St. 1 (1884).  A corporation may make a loan if such a transaction falls within the scope of the corporation's general authority to perform such acts as are reasonably necessary to carry out its stated corporate purposes.  *See White's Bank of Buffalo v. Toledo Fire & Marine Ins. Co*, 12 Ohio St. 601 (1861).

Defendants argue that the loans in question do not represent a breach of fiduciary duty, since the operating agreements of the respective business entities authorize loans and the Board of Directors unanimously approved the loans.  (Doc. 23, Jimmie Perry Aff. at 2; Doc. 39).  An operating agreement may effectively limit or define the scope of fiduciary duties imposed upon its members.  *McConnell v. Hunt Sports Ent.*,725 N.E. 2d 1193, 1214 (Ohio Ct. App. 1999) (finding

6

that competing as authorized by an operating agreement did not constitute a breach of fiduciary duty). Furthermore, "the obligor may be relieved of [a fiduciary duty] by the obligee who would benefit from its performance." *Cruz v. South Dayton Urological Assocs., Inc.*, 700 N.E.2d 675, 680 (Ohio Ct. App. 1997). In *Cruz*, the plaintiff executed an agreement that permitted the defendant to terminate him without cause. The court held that the agreement relieved the defendant of his fiduciary duty, since the plaintiff specifically authorized the alleged breach. *Id.*

In the instant case, Section 4.4 of the Per-Co operating agreement specifically enumerates the power and authority vested in the manager, Defendant Jimmie Perry, including to "[b]orrow or loan funds in the Company's name." (Doc. 39, Ex. 1). Plaintiff does not challenge the controlling power of the operating agreements, and instead suggests that the loans themselves somehow demonstrate breach of fiduciary duty. No breach of fiduciary duty exists when an agreement is signed that effectively relieves the fiduciary of liability by authorizing the action. *See Hicks v. Bryan Med. Group, Inc.*, 287 F. Supp. 2d 795, 807 (N.D. Ohio 2003) (finding that signing of an agreement allowing for termination without cause effectively relieves a fiduciary of any duty owed to terminate only for good cause). Plaintiff agreed to the terms of the operating agreements, and therefore relieved Defendants of any liability regarding the ability to loan assets.

Defendants further assert that the loan by Perry Farms to CBA for $50,000 was repaid in full. (Doc. 23, Jimmie Perry Aff. at 2). Plaintiff fails to assert any genuine issue for trial that might demonstrate that Defendants made loans providing unequal opportunities for shareholders or benefitting majority shareholders personally rather than the corporation as a whole. Because the operating agreement authorizes Defendants to make loans and because under general principles corporations may make loans within the scope of the corporation's general authority,

Defendant is entitled to summary judgment on these claims. Even viewing the facts in the light most favorable to the Plaintiff, no genuine issue for trial exists as to whether the loans in question constituted a breach of fiduciary duty. Plaintiff has not demonstrated that the loans in question injured him. Plaintiff's allegations that the Perry Farms loans to BCA and CBA were made is simply not enough to demonstrate a breach of fiduciary duty.

### C. Amended Income and Loss Allocation

Similarly, Plaintiff's claims of breach of fiduciary duty as a result of North-Cross Development's amended income and loss allocations fail to produce a genuine issue for trial. Plaintiff argues that his 12.5% stake in ownership, shared profits and losses was reduced to 0% by Defendants, thereby effectively creating an advantage for Defendants and not Plaintiff as a shareholder. (Doc. 36). North Cross' operating agreement provides the authority for the manager to "change the percentage of profit, loss or capital allocable to a Member." (Doc. 39, Ex. 2). The operating agreement specifically authorizes the manager to alter income and loss allocations, and therefore the agreement effectively relieves the fiduciary from liability for those changes. Plaintiff does not dispute the legitimacy of the operating agreement. Plaintiff agreed to the terms of North Cross' operating agreement, and therefore waived any claims of breach of fiduciary duty for authorized actions, including amendments to income and loss allocation. *McConnell*, 725 N.E. 2d at 1214. Furthermore, Plaintiff does not dispute Defendants' assertion that North Cross has not had profits since its inception, and therefore the amendments in question did not have any impact on Plaintiff individually, as there was no income to be had. (Doc. 39, Jimmie Perry Aff. ¶5). Additionally, Plaintiff argues that all of Defendant Jimmie Perry's actions were approved retroactively without meetings, yet fails to describe how this procedure violates the corporation's

8

articles.  (Doc. 36).  Plaintiff further concedes that he did not attend the meetings where the

authorization of such action was approved.  *Id.*  Plaintiff's claims of breach of a fiduciary duty by

Defendants as a result of alteration of Plaintiff's rights are without merit.

### D.  Property Sales

The Ohio Revised Code authorizes corporations to purchase and sell property.   *See*  Ohio

Rev. Code Ann. § 1701.13; *see also Holiday Props. Acquisition Corp. v. Lowrie*, Nos. 21055,

21133, 2003 WL 1040162, at *2 (Ohio Ct. App. Mar 12, 2003).  Plaintiff contends that the

transfer of assets to other entities in itself establishes a breach of fiduciary duty, regardless of any

legitimate business purpose.  (Doc. 36).  Defendants contend that a legitimate business purpose

exists for the sale of the properties in question, and therefore no breach of fiduciary duty exists.

(Doc. 39).

A legitimate business purpose serves as a defense to what ordinarily may be a breach of

fiduciary duty by a majority shareholder.  *Crosby*, 47 Ohio St. 3d at 109.  Plaintiff does not

dispute Defendants' assertion that the sale of properties to BDP served to provide Perry Farms

with favorable tax treatment and pre-development profit.  (Doc. 39).  Defendants further argue,

and Plaintiff does not object, that BDP sold real property known as the "Bailey Road Farm",

"Temperance Road Farm" and "Berlin Avenue Property" for *fair market value*, and these sales

were approved unanimously by the Board of Directors.  (Doc. 39, Jimmie Perry Aff. ¶¶7-9).

Defendants' assert that BDP provided Perry Farms with promissory notes for the property sales in

question.  Plaintiff fails to establish any genuine issue of material fact that, even viewed in the

light most favorable to Plaintiff, might demonstrate Defendants' sale of these properties was done

in a manner that lacked a legitimate business purpose, or provided individualized advantage to

select members of the corporation rather than advantages to the corporation itself.  Plaintiff fails to show how he was injured by the sale of the aforementioned properties at fair market value for such purposes.  Accordingly, Defendants are entitled to summary judgment with respect to the sales of property.

### E.  Shareholders' Receipt of Money

Ohio law permits corporations to issue redeemable shares provided that they do not violate the general principle of use to create an unfair advantage for certain members.  *See* Ohio Rev. Code. Ann. § 1701.06(A)(3).  Plaintiff contends that the redemption option in question demonstrates a breach of fiduciary duty by Defendants through unfairly distributing funds to select shareholders.  (Doc. 36).  Plaintiff argues that Defendants distributed a total of $631,000 to "favored shareholders", excluding Plaintiff.  (Doc. 36).  Defendants assert that the distributions in question were stock redemptions that select stockholders chose to redeem, and that Plaintiff decided not to redeem despite being provided the opportunity.  (Doc. 39).  Defendants provide a letter addressed to "the owners of Perry Farms, Inc., class B stock".[1]  (Doc. 39, Ex. 3). Controlling shareholders breach their fiduciary duty when they prohibit minority shareholders from selling their stock to the corporation under similar terms and prices offered to majority shareholders.  *See Estate of Schroer v. Stamco Supply, Inc.*, 482 N.E.2d 975 (Ohio Ct. App. 1984). By contrast, no breach of fiduciary duty exists when majority shareholders offer minority shareholders the same opportunity to redeem stock.  *See Binsack v. Hipp*, No. H-97-029, 1998 WL

---

[1]

The Court notes that Plaintiff's Complaint describes Stanley Perry as a class A shareholder, and Defendants' answer confirms the same.  (Doc. 1, ¶5; Doc. 10, ¶5).  Plaintiff does not dispute whether notification of the opportunity was provided despite the discrepancy between the letter and Plaintiff's status.  Meetings were held regarding the redemption opportunity which Plaintiff failed to attend, providing constructive notice of the opportunity.  (Doc. 36).

334223 (Ohio Ct. App. June 5, 1998).  Here, Plaintiff was provided such opportunity and decided not to redeem the distribution.  Plaintiff fails to allege specific facts that create a genuine issue for trial regarding the distributions of money to favored shareholders.  Therefore, Defendants' motion for summary judgment is granted with respect to preferential payments.

### F.  Claims Against SEMCO

Plaintiff fails to articulate any claims against SEMCO.  Plaintiff's claims focus on breach of fiduciary duties by North-Cross, Per-Co, Perry Farms and Jimmie W. Perry, not SEMCO. SEMCO is not involved in any of the claims Plaintiff asserts.  Accordingly, because no genuine issue for trial with respect to SEMCO exists, Defendants' motion for summary judgment with respect to SEMCO is granted.

## IV.  Conclusion

For the above stated reasons, the Court grants Defendants' motion for summary judgment. (Doc. 23).

IT IS SO ORDERED.

  s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE